UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CAROL A. ORAMOUS                          CIVIL ACTION

VERSUS                                    NO. 05-3677

THE MILITARY DEPARTMENT,                  MAG. JUDGE WILKINSON
STATE OF LOUISIANA

## ORDER AND REASONS ON MOTION

Plaintiff, Carol A. Oramous, filed this action against her former employer, the

Military Department of the State of Louisiana ("the Military Department"), alleging that

her immediate supervisor had sexually harassed her, retaliated against her, discriminated

against her on the basis of her race and created a hostile work environment in violation

of Title VII, 42 U.S.C. § 2000e-5, and 42 U.S.C. § 1981.  Oramous also asserted state

law claims of negligent and intentional infliction of emotional distress, assault, hostile

work environment and failure to supervise employees.  She alleged that the Military

Department is responsible under the doctrine of respondeat superior for the actions of her

former supervisor.  Petition and Supplemental and Amending Petition, attached to

defendant's Notice of Removal, Record Doc. No. 1.

The Military Department filed a motion for summary judgment, supported by the

transcript of plaintiff's deposition, several exhibits that had been authenticated at the

deposition and several other exhibits that were neither sworn nor certified as required by Fed. R. Civ. P. 56(e).  Record Doc. No. 22.

Plaintiff filed a timely opposition memorandum, supported by excerpts from her deposition, some of the same certified exhibits attached to defendant's motion and one uncertified exhibit.  Record Doc. No. 29.  Defendant received leave to file a reply memorandum.  Record Doc. Nos. 29, 30.

I ordered the parties to verify their unsworn exhibits if they wanted the court to consider those documents.  Record Doc. No. 33.  Oramous submitted an affidavit verifying the authenticity of her Exhibit B.  Record Doc. No. 35.

The Military Department submitted affidavits verifying the authenticity of its Exhibits G, H, I and J, and a memorandum arguing that its Exhibits B, C, D, and F,[1] which remain unverified, are nonetheless admissible as exceptions to the hearsay rule. Record Doc. No. 34.  Plaintiff, without seeking leave of court as required by Local Rule 7.5E, filed a supplemental memorandum, in which she objects to the admissibility of defendant's Exhibits B and F.  Record Doc. No. 36.  Defendant's arguments concerning exceptions to the hearsay rule deal with admissibility, not authenticity.  Because the

---

[1]Exhibit B is a typed memorandum from Sgt. Angel Otero to Willie Smith dated July 14, 2003. Exhibit C is a Charging Party Sexual Harassment Questionnaire signed by plaintiff on October 6, 2004. Exhibit D is a letter from the Equal Employment Opportunity Commission ("EEOC") to Oramous dated April 1, 2005.  Exhibit F is a handwritten statement of Willie Smith dated July 16, 2003.

authenticity and source of defendant's Exhibits B and F remain unverified and because plaintiff properly objects to them, on those grounds, the court has not considered those two exhibits in ruling on the summary judgment motion.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

I.    THE UNDISPUTED FACTS

The following facts are undisputed, solely for purposes of the pending motion for summary judgment.

Oramous, a Caucasian woman, worked for the Military Department in the janitorial department at Jackson Barracks in New Orleans from April 2003 until March 2005, when she quit.  At the time of the relevant events, she was supervised by Willie Smith, an African-American man.

Smith repeatedly made unwelcome, sexually suggestive comments to Oramous beginning shortly after her employment began and continuing through July 12, 2003. Defendant's Exh. A, deposition of Carol A. Oramous, at pp. 53-54, 59-60.  On July 12, 2003, Smith grabbed Oramous from behind in the laundry room of the Barracks, held her tightly against his body, twisted her arms until they hurt and would not loosen his grasp until another co-worker yelled at him to let her go.  Oramous fled, crying and upset.

Smith pursued her as she drove away.  When he caught up with her where she had parked her vehicle, Smith again grabbed plaintiff's arm and made a sexual proposition.  Oramous broke away, left in her vehicle and immediately reported Smith's unwelcome touching and sexual comments to the base Chief of Police.  She was told to go home for the rest of that day.  Id. at pp. 45-51.

The Military Department began investigating plaintiff's allegations the next day. Sergeant Angel Otero, who was Smith's supervisor, id. at p. 55, interviewed both Oramous and Smith.  Sgt. Otero reported the incident to Colonel Lester Schmidt, who was present when plaintiff told her story again. Sgt. Otero took written statements from Smith and Oramous on July 16, 2003 and talked with the two of them together about the incident on that date.  Id. at pp. 45-51, 140-44; id. Deposition Exh. 1, plaintiff's handwritten statement dated July 16, 2003.

The Military Department had a written sexual harassment policy dated April 1, 2003.  Defendant's Exh. I, Sexual Harassment Prevention Policy Statement.  Oramous testified that the policy was posted "all over the place after the [July 12, 2003] incident," but that it had not been posted or disseminated to employees before that.  She did not read it or consider it useful after she made her initial complaint because she felt that nothing had been done about her complaint.  Defendant's Exh. A at pp. 161-62, 207-08.

Smith did not harass plaintiff sexually after July 12, 2003. Id. at pp. 177-78, 197, 201-02, 209. Oramous testified that she was told that Smith would be suspended for a few days without pay, required to attend sexual harassment classes and prohibited from being around her again, but that, as far as she could tell, none of these things occurred. She felt that higher level supervisors acted as though nothing had happened when she later complained about Smith's retaliatory acts. Id. at pp. 71-72, 87, 89-90, 129-30, 149-51, 169, 172-73, 203. She believed that Smith should have been fired after the July 12th incident. Id. at pp. 162-63.

The Military Department conducted a sexual harassment training class on July 21, 2003, which both Oramous and Smith attended. Id. at pp. 151-52, 160-63; id. Deposition Exh. 3, Sexual Harassment Training 7/21/03 list of attendees' signatures.

Because plaintiff felt that nothing had happened to Smith as a result of her complaint of sexual harassment, she complained to Col. Schmidt about one month after the July 12th incident, about both the incident and Smith's subsequent retaliatory acts against her, including the reduction of her hours from full-time to part-time. Col. Schmidt listened to her entire story, apologized to her and told her that he did not allow sexual harassment on his military base and that he would assign someone to take care of it. He assigned the matter to Andrew Sercovich. Plaintiff thought that Sercovich did not take her complaints seriously because Oramous overheard Sercovich telling another

woman, apparently in a joking manner, that he had better not sit too close to her or she might charge him with sexual harassment.  When she confronted Sercovich about this comment the next day, he said nothing.  Id. at pp. 87-88, 149-50, 168, 181-82.

Plaintiff's work hours were reduced from full-time to part-time in August 2003. Smith did not supervise Oramous for a brief period after July 12, 2003, but he soon began assigning her work again each morning.  Id. at pp. 72-73, 147.  Smith gave her the worst jobs, failed to give her the supplies or assistance that she needed to do her job properly, failed to give her timely transportation to other parts of the Jackson Barracks compound and was mean to her.  Id. at pp. 73-77, 90, 103-07, 115-17, 121-22, 177-79, 203-04, 214-15, 217.  Oramous was sent home for one day without pay when Smith gave her a disciplinary write-up for arguing with him about supplies.  Id. at pp. 79-81.

Oramous testified that she was not aware that any disciplinary actions were taken against Smith, id. at pp. 169, 172-73, and that no one ever told her that Smith had received a reprimand or a letter of counseling.  Id. at pp. 151, 189.  However, at Sercovich's instruction, plaintiff wrote a statement on August 20, 2003 in which she acknowledged that Sercovich told her that Smith had been reprimanded, had received a counseling statement and had been told that any future misconduct could result in disciplinary action, including possible termination.  Oramous also acknowledged that she understood that she should inform Sgt. Otero or other managers if any other situations

-6-

occurred with Smith, and that Sercovich considered that the matter between her and Smith had been settled.  Id. at pp. 167-68, 172, 177, 190; id. Deposition Exh. 2.

Defendant took written statements from plaintiff's co-workers Catherine Schneider and Louis Royer on August 26, 2003, concerning their observations of the July 12, 2003 incident between Oramous and Smith.  Defendant's Exhs. G, H.

Oramous contacted the EEOC at the beginning of October 2004.  Without describing any specific incidents or dates, she alleged in a "Charging Party Sexual Harassment Questionnaire" that Smith had sexually harassed her.  She stated that she had reported the harassment to the base Chief of Police, and that the only thing her employer did in response was to hold a sexual harassment meeting.  Defendant's Exh. C, Charging Party Sexual Harassment Questionnaire, dated October 6, 2004.

On January 10, 2005, plaintiff signed a formal charge of discrimination, which was received by the EEOC on January 20, 2005.  In the charge, she alleged that Smith had subjected her to "unwelcome verbal and physical sexual advances on numerous occasions" and to race discrimination, between May 1, 2003 and July 31, 2004.  Id. Deposition Exh. 4.

Another meeting for all personnel was held on January 17, 2005 to address sexual harassment issues.  Plaintiff's Supplemental and Amending Petition, Record Doc. No. 1, at ¶ VIII(A); Defendant's Exh. A at pp. 210, 212-13.

During a meeting on January 31, 2005, Smith told all janitorial and grounds-keeping employees that the starting work times of all part-time employees would change effective the next day.  As a result of the change in her starting time, Oramous could no longer ride to work with one of her co-workers.  She believed that the part-time employees' hours were changed to harass her personally because there were only three part-time employees and because Smith knew that her car had broken down and that she rode to work with her co-worker.  Id. at pp. 82-86, 214-19.

Oramous complained to Sgt. Otero about the reduction from full- to part-time hours shortly after it happened in August 2003.  He told her that the part-time job was the only one then available and that, if she needed more money, she should try to find either a supplemental part-time job or a different full-time job.  Plaintiff quit in March 2005 because she was not making enough money.  Id. at pp. 84-86, 225.  She testified that Smith's actions, including the reduction in her hours and the change in start times, made her employment so difficult and resulted in such decreased income that she could not continue to work at Jackson Barracks.[2]  Id. at pp. 203-06.

The EEOC mailed a right-to-sue letter to plaintiff and her attorney on April 7, 2005.  Defendant's Exh. E.

---

[2]Plaintiff did not bring a claim for constructive discharge in her complaint or amended complaint.

On July 1, 2005, Oramous filed a petition for damages in the Civil District Court for the Parish of Orleans, in which she brought claims under state law only.  She filed an amended petition on July 14, 2005 that alleged causes of action under Title VII and 42 U.S.C. § 1981.  Defendant removed the action to this court.

On July 16, 2005, after Oramous had filed her lawsuit, Col. Schmidt prepared a "Memorandum for Record" concerning his "third-line supervisory investigation" of plaintiff's sexual harassment complaint.  His memorandum describes the steps he took from August 2 through 15, 2003, after Sgts. Otero and Loyd Baham, plaintiff's first and second line supervisors, respectively, had investigated the complaint and, according to Col. Schmidt, they "believed they ha[d] resolved the issue by counseling Mr. Smith and reassigning Ms. Oramous to work in a different work (sic)."  Col. Schmidt spoke to Oramous personally and told her that Smith would be reassigned but that he would not be prohibited from talking to her, which she said was satisfactory.  He also talked to Smith, who denied the allegations, and to several other people on the janitorial staff.  His investigation found that no similar complaints had ever been made against Smith.  Col. Schmidt decided that, "[a]fter a two week effort in attempting to obtain evidence to substantiate the allegations, it became evident that all I had was a 'he said, she said' situation and [I] concluded that the counseling and reprimand for poor supervisor judgment with provisions for harsher punishment if any future complaints occurred was

sufficient."   He delegated Sercovich to notify Oramous of his decision.   She acknowledged that notification in her August 20, 2003 written statement.   He also notified Sgts. Baham and Otero of the outcome and instructed them to "keep a close eye on this situation."   Col. Schmidt considered the case resolved.   Plaintiff did not appeal the decision to the Adjutant General.   Defendant's Exh. J, Memorandum for Record from Lester R. Schmidt dated July 16, 2005.

II.     ANALYSIS

     A.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.   Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original)).  "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"  National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

B.   <u>Plaintiff's Section 1981 Claim</u>

The law is clear that Section 1981 applies only to claims of race discrimination, and not to claims of sexual harassment or retaliation for complaining about sexual harassment. <u>Payne v. Travenol Labs., Inc.</u>, 673 F.2d 798, 815 (5th Cir. 1982); <u>Ingram v. City of Farmers Branch</u>, No. 3:00-CV-0560G, 2001 WL 720476, at *7 (N.D. Tex. June 25, 2001) (citing <u>Runyon v. McCrary</u>, 427 U.S. 160 (1976); <u>Payne</u>, 673 F.2d at 815); <u>Walker v. Uncle Bens, Inc.</u>, No. 97-CV-65-D-B, 1998 WL 173228, at *11 (N.D. Miss. Mar. 30, 1998); <u>Messer v. Meno</u>, 936 F. Supp. 1280, 1285 (W.D. Tex. 1996) , <u>aff'd in part & rev'd in part on other grounds</u>, 130 F.3d 130, 133 (5th Cir. 1997).

Plaintiff does not respond to defendant's argument that she has presented no evidence of any racially based incidents.  Accordingly, defendant is entitled to summary judgment on this claim.

C.   <u>Plaintiff's State Law Claims Arising Before July 1, 2004 and her Title VII</u>
<u>Sexual Harassment Claims Are Time-Barred                              </u>

Oramous asserts state law claims of negligent and intentional infliction of emotional distress, assault, hostile work environment under the Louisiana Employment Discrimination Law ("LEDL")[3] and failure to supervise employees properly, which appears to be a claim based on negligence.  She also asserts a sexual harassment claim under Title VII.  Defendant argues that all of these claims are time-barred.

To the extent that any of plaintiff's state law causes of action accrued before July 1, 2004 (one year before Oramous filed the instant lawsuit on July 1, 2005), the state law claims have prescribed under Louisiana's one-year liberative prescriptive period for torts, La. Civ. Code art. 3492, and/or the one-year prescriptive period provided in the LEDL.  La. Rev. Stat. § 23:303(D).

Although the LEDL provides for a six-month suspension of prescription during any "administrative review or investigation of the [discrimination] claim" by the EEOC, id., that provision does not aid Oramous.  She did not file her formal discrimination charge until January 20, 2005, which was more than one year after the last act of sexual harassment supported by any evidence occurred on July 12, 2003.  Thus, the prescriptive

---

[3]Although the petition refers to La. Rev. Stat. § 23:311, that is the age discrimination statute. Oramous does not make any factual allegations regarding her age.  In her memorandum in opposition to defendant's summary judgment motion, Oramous refers to La. Rev. Stat. § 23:303, which provides a right of action for various types of discrimination, including sexual discrimination.  See id. § 23:332.

period had already run <u>before</u> she filed the charge.[4]  Even if the prescriptive period is

calculated from the date that Oramous first contacted the EEOC, which may have been

on October 6, 2004, as indicated by the date on which plaintiff signed the Charging Party

Sexual Harassment Questionnaire, Defendant's Exh. C, the one-year limitations period

had already expired on July 12, 2004.

Thus, plaintiff's claims for negligent and intentional infliction of emotional distress,

assault, sexually hostile work environment and failure to supervise employees, which

arise out of the discrete July 12, 2003 incident and any incidents that occurred before that

date, have prescribed.

Title VII's statute of limitations also bars Oramous's federal sexual harassment

claim.  A Title VII plaintiff in Louisiana must file her charge with the EEOC within 300

days of the alleged discriminatory conduct.  <u>Janmeja v. Board of Supervisors</u>, No.

03-30957, 2004 WL 902304, at *1 (5th Cir. Apr. 28, 2004) (citing 42 U.S.C.

§ 2000e-5(e)(1)); <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 351 (5th Cir.

2001); <u>Fairley v. Ensco Offshore Co.</u>, No. 04-1992, 2005 WL 1077643, at *1 (E.D. La.

May 3, 2005); <u>Mayes v. Office Depot, Inc.</u>, 292 F. Supp. 2d 878, 888 (W.D. La. 2003).

Failure to file a charge with the EEOC within the 300-day limitations period requires

---

[4]The result would be the same even if the court gave plaintiff the benefit of the earlier signing date of January 10, 2005.

dismissal of a civil complaint of discrimination as time-barred under Title VII. <u>Janmeja</u>, 2004 WL 902304, at *2; <u>Fairley</u>, 2005 WL 1077643, at *1.

As previously stated, Oramous did not file her formal discrimination charge until January 20, 2005. The Title VII limitations period expired 300 days after the last act of sexual harassment on July 12, 2003, or on May 7, 2004. Thus, the statute of limitations had already run when she filed her formal charge. Even if the limitations period is calculated from the date that Oramous first contacted the EEOC, which may have been on or around October 6, 2004, the limitations period had already expired on May 7, 2004.

Plaintiff's Title VII claim is therefore time-barred unless equitable tolling operates to save the claim, <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002), or unless plaintiff can show a continuing violation with some of the discriminatory acts having taken place during the 300-day limitations period. <u>Janmeja</u>, 2004 WL 902304, at *3; <u>Celestine</u>, 266 F.3d at 351-52. Oramous does not argue that equitable tolling applies to her sexual harassment claim, but she does contend that Smith engaged in a continuing violation that makes her claim timely.

Similarly, any of plaintiff's state law claims that are based on incidents or actions that occurred after July 12, 2003 and before July 1, 2004 have also prescribed, unless Oramous can show that a continuing violation occurred, with some of the discriminatory

or harassing acts having taken place during the one-year period before July 1, 2005, the date on which she filed her suit.  Id.[5]

Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete discriminatory acts:  "He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."  This court has identified at least three factors that may be considered in determining if a continuing violation exists:  (1) Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation?  (2) Are the alleged acts recurring or more in the nature of an isolated work assignment or incident?  (3) Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights?

\*    \*    \*

This court's decision in Huckabay makes clear that a one-time employment event, including the failure to hire, promote, or train and dismals [sic] or demotions, is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued." These "discrete adverse actions, although racially motivated,[6] cannot be lumped together with the day-to-day pattern of racial harassment" and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine.  An employee who claims to be the victim of a racially motivated

_____

[5]"Louisiana courts and federal courts applying Louisiana law have routinely looked to federal jurisprudence to interpret Louisiana employment discrimination statutes."  Smith v. Amedisys Inc., 298 F.3d 434, 448 (5th Cir. 2002) (citing Nichols v. Lewis Grocer, 138 F.3d 563, 566 (5th Cir. 1998); King v. Phelps Dunbar, L.L.P., 743 So. 2d 181, 187 (La. 1999)).

[6]Although Celestine involved racial harassment, the same standards apply in cases that allege sexual harassment, as indicated by the Fifth Circuit's citation in Celestine of Hardin and Webb, which both involved sexual harassment and/or gender discrimination.

failure to promote or train is put on notice that his rights have been violated at the time the adverse employment decision occurs, and must therefore bring the claim within [300] days of the adverse decision.

The appellants' hostile work environment claims are potentially more compatible with the continuing violation doctrine. However, the continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation. In addition, "the continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period," such that a valid connection exists between them. Finally, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she can not reach back and base her suit on conduct that occurred outside the statute of limitations."

Id. at 352-53 (emphasis added) (quoting Huckabay v. Moore, 142 F.3d 233, 239, 240 (5th Cir. 1998); Martineau v. ARCO Chem. Co., 203 F.3d 904, 913 (5th Cir. 2000); Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999)) (citing Berry v. Board of Supervisors, 715 F.2d 971, 981 (5th Cir. 1983); Webb v. Cardiothoracic Surgery Assocs., 139 F.3d 532, 537 (5th Cir. 1998), abrogated in part on other grounds by Burlington No. & Santa Fe Ry. v. White, 126 S.Ct. 2405 (2006)); accord Celestine v. Petroleos de Venezuella SA, 108 Fed. Appx. 180, 2004 WL 1941739, at *4-5 & n.10 (5th Cir. 2004) (on appeal after remand, noting that standards remain the same as in 2001 when first Celestine case was decided).

As to sexual harassment under federal or state law, Oramous argues in her memorandum that Smith continued to harass her after July 12, 2003 until she resigned

from her job in March 2005.  However, this is mere argument.  She offers no <u>evidence</u> of <u>sexual harassment</u> during this period.  To the contrary, the undisputed evidence, including plaintiff's own testimony, shows that Smith did not make any sexually suggestive comments and did not touch her after July 12, 2003.  Defendant's Exh. A at pp. 177-78, 197, 201-02, 209.   In her Charging Party Sexual Harassment Questionnaire dated October 6, 2004, plaintiff stated that Smith "started acting very hostile and mean" after she reported his sexual harassment and that "[h]e does <u>not</u> try to sexually harass me any more[,] just try's [sic] to give me a hard time."  Defendant's Exh. C, at pp. 3-4 (emphasis added).   In a handwritten memorandum dated January 31, 2005, Oramous does not mention any sexual misconduct, but alleges that Smith's change in her work hours "was done intentionly [sic] to hurt and harass me into quitting my job and . . . because of the lawsuit I have against Mr. Willie Smith for sexaul [sic] harassment."[7]  Plaintiff's Exh. B. Thus, plaintiff's factual allegations state a cause of action that Smith <u>retaliated</u> against her after July 12, 2003 for having reported his sexual harassment, <u>but not</u> that he created a sexually harassing or hostile work environment after that date.

The facts in the instant case are similar to those in <u>Hardin</u>.  The court in that case found that, although plaintiff's supervisor had engaged in rude and obnoxious conduct,

---

[7]Oramous did not have a lawsuit pending against Smith at this time, but had filed her EEOC charge against him on January 20, 2005.

including "allowing a door to close in Hardin's face, startling her by approaching her from behind in an electric cart without warning, cutting her off in the parking lot, and his persistent cursing and use of abusive language," plaintiff produced no evidence that her supervisor's behavior had been racially or sexually based.  Hardin, 167 F.3d at 344; see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (Title VII is not "a general civility code"); Webb, 139 F.3d at 539 (evidence that supervisor "was frequently rude and abrasive to" plaintiff and other employees insufficient to prove sexual harassment); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (citing Faragher v. City of Boca Raton, 524 U.S. 775 (1998)) (discourtesy, rudeness, offhand comments and isolated incidents that are not extremely serious do not amount to discrimination).

No evidence supports a finding of continuing violation based on a sexually hostile work environment or sexual harassment after July 12, 2003.  Plaintiff's sexual harassment claims are therefore time-barred under both federal and state law.  Plaintiff's state law claims of negligent or intentional infliction of emotional distress and failure to supervise also have prescribed.  These claims are based only on alleged, underlying sexual harassment.  However, no evidence has been presented to establish that continuous sexual harassment actually occurred after July 12, 2003.  Thus, plaintiff's claims are prescribed or barred by the applicable statute of limitations, except only to the extent that she asserts

claims of negligent or intentional infliction of emotional distress and failure to supervise based on any retaliatory incidents that occurred between July 1, 2004 and July 1, 2005, the one-year period before she filed suit. Those claims have <u>not</u> prescribed and are discussed below.

D.    <u>Plaintiff's Negligence Claims</u>

Plaintiff's claims of negligent infliction of emotional distress and negligent failure to supervise are barred as a matter of law by the Louisiana Worker's Compensation Act, which provides the exclusive remedy for any claim of negligence against an employer. La. Rev. Stat. § 23:1032; <u>Deshotel v. Guichard Operating Co.</u>, 916 So.2d 72, 75 (La. 2004). Accordingly, defendant is entitled to summary judgment on these claims.

E.    <u>Plaintiff's Intentional Infliction of Emotional Distress Claim</u>

As previously discussed, plaintiff's intentional infliction of emotional distress claim, to the extent it is based on incidents that occurred before July 1, 2004, including the reduction from full-time to part-time work in August 2003, has prescribed. Plaintiff's remaining intentional infliction of emotional distress claim can only be based on incidents that occurred between July 1, 2004 and March 2005, when she quit her job. Defendant argues that plaintiff's allegations do not rise to the level of intentional infliction of emotional distress.

An emotional distress claim under Louisiana law requires that the plaintiff establish three elements:  (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered was severe; <u>and</u> (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct. Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that "courts require truly outrageous conduct before allowing a claim . . . even to be presented to a jury."

<u>Morris v. Dillard Dep't Stores</u>, 277 F.3d 743, 756 (5th Cir. 2001) (emphasis added)

(quoting <u>Nicholas v. Allstate Ins. Co.</u>, 765 So. 2d 1017, 1024-25 (La. 2000)) (citing <u>White</u>

<u>v. Monsanto Co.</u>, 585 So. 2d 1205, 1209 (La. 1991)).

Although recognizing a cause of action for intentional infliction of emotional distress in a workplace setting, this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time.  The distress suffered by the employee must be more than a reasonable person could be expected to endure.  Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry.

<u>Nicholas</u>, 765 So. 2d at 1026-27 (citations omitted).

In the instant case, Oramous provided evidence of only three types of conduct by Smith to support her intentional infliction of emotional distress claim:  (1) his deliberate failure to give her necessary supplies and adequate transportation to do her job, which she alleges was continuous from shortly after July 12, 2003 until she quit in March 2005; (2) a disciplinary write-up for arguing with him about supplies, for which she was sent home

for one day without pay (at some unspecified date, which the court will assume for present purposes was within the prescriptive period); and (3) the change in her daily start time on February 1, 2005, with the result that she could no longer ride to work with a co-worker.

This conduct does not rise to the level of extreme and outrageous under Louisiana law. Oramous was usually able to get the supplies and rides that she needed from her co-workers. During a presumptive 12-month period, she was suspended for one day without pay for admittedly arguing with Smith, but she was never disciplined in any way for failing to accomplish her work, which indicates that she was routinely able to perform as expected. A one-day suspension is not an extreme or outrageous punishment for arguing with a supervisor. After her daily start time was changed, she worked for only about two weeks, then gave two weeks' notice that she was going to quit.

These conditions are not even as severe as those reported in some recent cases in which Louisiana courts held that plaintiffs failed to establish facts sufficient to constitute intentional infliction of emotional distress in the workplace, as described by the Louisiana Supreme Court in Nicholas: Stewart v. Parish of Jefferson, 668 So. 2d 1292 (La. App. 5th Cir. 1996) ("holding that intentional infliction of emotional distress was not shown, even though a supervisor maintained two-year's harassment in which he questioned the worker's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination"); Beaudoin v. Hartford

Accordingly,. & Indem. Co., 594 So. 2d 1049 (La. App. 3d Cir. 1992) ("holding that even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid, and fat), commented about the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct"); Deus v. Allstate Ins. Co., 15 F.3d 506 (5th Cir. 1994) ("holding that employer may call upon an employee to do more than others, use special review on particular employees and not others to downgrade performance, institute long term plan to move younger persons into sales and management positions without engaging in extreme and outrageous conduct"). Nicholas, 765 So. 2d at 1027.

Nor has Oramous provided any evidence, beyond her own subjective belief, that Smith desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from any of his conduct. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

Because plaintiff has not carried her burden to come forward with evidence to support the essential elements of her intentional infliction of emotional distress claim, defendant is entitled to summary judgment on this claim.

F.      Plaintiff's Retaliation Claim

The Military Department argues that plaintiff has not exhausted her administrative remedies by filing a retaliation charge with the EEOC.  "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Thomas v. Texas Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000) (citation omitted).  Any charge not alleged in the EEOC complaint and/or reasonably expected to grow out of the EEOC investigation is barred from judicial review.  Id.; Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995).

In the only charge in the record, Oramous complained only of sexual harassment and race discrimination.  Defendant's Exh. A, Deposition Exh. 4.  The "retaliation" box on the form was not checked and there is no mention of any retaliatory conduct in the particulars of the charge.  The EEOC's investigation based on this charge could not reasonably have been expected to encompass any retaliation.

Accordingly, plaintiff's retaliation claim is barred from judicial review and defendant is entitled summary judgment.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding.  Judgment will be entered accordingly.

New Orleans, Louisiana, this <u>  18th </u> day of June, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE